PETERS *v.* BIRKETT.[1]

FRAUD—MISREPRESENTATIONS OF VENDOR—DAMAGES RECOVERABLE.

In an action for fraud in misrepresenting the right of head belonging to a water power sold by defendant to plaintiff, it appeared that on a bill by a landowner against plaintiff, to restrain the maintenance of the dam at the height represented, a decree was rendered giving plaintiff the option of reducing the head a certain amount or paying complainant's damages to be assessed, and that plaintiff elected to reduce the head; whereupon the court directed a verdict for defendant on the ground that by electing to damage the power by reducing the head, when he might have preserved it by paying an inconsiderable amount as damages, plaintiff had lost his right of action. *Held*, error, since plaintiff's right of action accrued at once when the representation was made and proved to be false, and the rule of damages was prima facie the difference between the value of the power as it was and what its value would have been had its condition been as represented; that while defendant might show in mitigation of damages that plaintiff might have relieved himself of a part of the damages by paying a less sum under the decree, such showing could not defeat plaintiff's right of recovery, especially as plaintiff might have been compelled to compensate other owners for the injury to their land as well.

Error to Livingston; Miner, J. Submitted April 15, 1908. (Docket No. 90.) Decided May 26, 1908.

Assumpsit under 3 Comp. Laws, § 10421, by Frank M. Peters against Thomas Birkett for fraud in the sale of certain real estate. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Louis E. Howlett*, for appellant.

*William P. Van Winkle* (*Rollin H. Person*, of counsel), for appellee.

[1] Rehearing denied June 27, 1908.

MONTGOMERY, J. This is an action in assumpsit brought under section 10421, 3 Comp. Laws, to recover for fraud and deceit in the sale by the defendant to the plaintiff of a mill property described in the deed of conveyance as—

"The mill and all belongings and the water and power privileges, mill dam and mill race which belongs to, or in any wise appertaining to said mill, and all lands flowed by the mill pond so far as the water power and lands flowed belonged to the estate of Joseph Kirkland, deceased."

The property consisted of a mill building erected in 1836 and the water power with which it was run. The water power was created by damming Portage creek, forming a large pond covering many acres of land west of the mill and extending up the creek for a distance of two miles or over. The testimony on the part of the plaintiff tended to show that before the purchase was made, he inquired of defendant how much right of head he had, and that the defendant replied "fourteen feet;" that this statement was in effect repeated in the presence of Mr. Erwin, an employé of defendant, and by him reaffirmed; that the purchase was made in reliance upon these conditions; that later one Floyd Reason, who owned a farm south of the pond, and some 20 rods or more distant therefrom, filed a bill in chancery against plaintiff to restrain him from overflowing his lands; that an injunction was issued; that the defendant was notified of these proceedings, took part in the same, and after a decision of the circuit court in chancery in favor of the complainant in that case, joined in an appeal to this court, becoming a surety on the appeal bond. On the hearing of that case in this court, *Reason* v. *Peters*, 148 Mich. 532, the court found that it appeared by a preponderance of the evidence that the complainant's lands were flooded during the year to a greater extent than they had ever been during ordinary seasons, and that the water had been raised 20 inches above its usual height. The present case was brought after the decision in the chancery case in the court below, and before final determination in this court.

In the chancery case, the court gave the defendant, the present plaintiff, the option of removing 20 inches of the flashboards, thus reducing the head of water and the ponding capacity of the race by 20 inches, or having the damages which had accrued to Reason assessed and paying the same. The case was remanded to the court below, and the election was made by the present plaintiff to have the decree entered in form requiring a reduction of the ponding capacity by removing 20 inches of the flashboards.

Plaintiff's testimony tended to show that the damages resulting from the necessity of removing 20 inches from the flashboards were from five to eight thousand dollars. When the plaintiff rested, the circuit court directed a verdict for the defendant, saying:

"The Supreme Court gave the plaintiff in this case the option of removing the flashboards or leaving them in. If he had left them in, as he might have done under the decision of the Supreme Court, then the only damages would have been what the damages were to the people who had been damaged by the overflow of the water, and, in the opinion of the court, when he removed those flashboards without the consent or the knowledge of Mr. Birkett, he took it upon himself, and it appears in this case that he understood that if he did that it would damage or almost ruin his mill plant; while if he had left them there, as the Supreme Court gave him authority to do, and let the court assess the damages of Mr. Reason, it might have been much less than $5,000, as it appears in the bill of complaint he only claimed, I think, $500."

We think the court was in error in this holding. The plaintiff's right of action accrued at once when the representation that the deed carried with it a right to a 14-foot head was made and proved to be false, and the rule of damages prima facie would be in such case the difference between the value of the land as it is and what its value would have been if its condition and quality had been as represented. *Page* v. *Wells,* 37 Mich. 415; *Jackson* v. *Armstrong,* 50 Mich. 65.

It is true that the defendant might have shown in mitigation of damages that the plaintiff could have relieved himself in part of these damages under the terms of the decree of the Supreme Court by a payment of a less sum. This would not have defeated the right to recovery. But it is to be noted that this mill pond covered a large amount of ground, not all of which was owned by Reason, and that the plaintiff might have been compelled by other owners of land to remove his flashboards or to compensate them for the injury to their land as well. So that it by no means appears that the plaintiff could have established his right to maintain this 14-foot head of dam by the payment of $500 or any other inconsiderable sum of money.

We think that the onus was thrown upon the defendant to show that the damage to the plaintiff was not as much as alleged, and that the case should have gone to the jury under proper instructions.

Judgment will be reversed, and a new trial ordered.

GRANT, C. J., and BLAIR, CARPENTER, and McALVAY, JJ., concurred.