Argued December 14, reversed and remanded December 30, 1960

# LIBBY CREEK LOGGING, INC. *v.* JOHNSON
## 358 P. 2d 491

*Dale Pierson*, Salem, argued the cause and filed a brief for the appellant.

*Robert L. Miller*, Gold Beach, argued the cause for the respondent. On the brief were Taylor and Miller, Gold Beach.

Before McAllister, Chief Justice, and Warner, Sloan, O'Connell and Howell, Justices.

HOWELL, J. (Pro Tempore)

Plaintiff brought an action at law against the defendant upon a promissory note. The defendant, in its answer, admitted the execution of the note and alleged three further and separate defenses including a counterclaim for fraud. The jury awarded the defendant the amount demanded in the counterclaim and plaintiff appeals.

The plaintiff owned certain timberland in Curry county and, after some negotiations, entered into a

written contract to sell the timber to defendant. The final contract provided that the defendant was to pay $18,500 for "all logs removed up to and including 1,000,000 board feet" and $18.50 per thousand for all logs removed over and above one million board feet. The defendant paid $15,000 of the $18,500 in cash and gave plaintiff a promissory note for the balance of $3,500. The note is the subject of this action.

The defendant contends the plaintiff represented the timber had been cruised and that there was at least one million feet of merchantable timber on the property. When defendant logged the property it yielded only 504,250 board feet of logs.

Plaintiff's brief states that two questions are presented for decision on this appeal. (1) Does the contract require the payment of $18,500 for all the logs removed up to and including one million board feet regardless of the amount actually logged, or is the contract ambiguous and, in effect, a timber cutting contract at $18.50 per thousand board feet for the amount actually logged? (2) Was the contract induced by fraudulent representations about the amount of timber on the property?

As plaintiff's first assignment of error it claims the trial court erred in overruling an objection to the introduction of any evidence relating to the defendant's first, second and third answer and counterclaim on the ground that none of them stated facts sufficient to constitute a defense.

The first affirmative answer alleged the contract is ambiguous and should be interpreted as a timber cutting contract based upon a price of $18.50 per thousand board feet of logs and not as a sale in gross for $18,500 for all logs removed up to and including one

million board feet. Defendant attached a copy of the agreement and incorporated it by reference.

The trial court found that the contract was ambiguous and submitted the construction of the contract to the jury as a question of fact. Exception was taken to this instruction and forms the basis for plaintiff's fourth assignment of error. We shall consider these two assignments together as both raise the question of ambiguity of the contract.

■ If the provisions of the contract are plain and unambiguous, it is the function of the court to interpret the contract and declare its legal effect. *Morey, Administratrix v. Redifer et al.*, 204 Or 194, 264 P2d 418, 282 P2d 1062; *Columbia Co. v. Ross Island Co.*, 145 Or 96, 25 P2d 911; *Wallace v. American Life Ins. Co.*, 111 Or 510, 225 P 192, 227 P 465.

If the language of the contract is ambiguous, or if technical words, terms of art, or local phrases are used, evidence showing the meaning or interpretation of the contract may be admitted. In such event, the jury should determine the intention of the parties. *Dorsey v. Oregon Motor Stages*, 183 Or 494, 194 P2d 967; *Turner v. Jackson*, 139 Or 539, 4 P2d 925, 11 P2d 1048; *Salem King's Products Co. v. Ramp*, 100 Or 329, 196 P 401; *Henry v. Harker*, 61 Or 276, 118 P 205, 122 P 298; *Longfellow v. Huffman*, 55 Or 481, 104 P 961.

It is not necessary to set forth the agreement in full. While the contract mentions the vendor shall pay the taxes; that the timber shall be logged in a good workmanlike manner; the agreement cannot be assigned; and the vendee shall render an accounting each month, these provisions were pertinent to the logging to be accomplished at $18.50 per thousand for all timber over one million board feet.

■ We believe that the following provision clearly

and unequivocally sets forth the intention of the parties as to the first million board feet of logs:

> "* * * said payment of eighteen thousand five hundred dollars ($18,500) previously agreed to, constitutes full and complete payment for all logs removed up to and including 1,000,000 board feet."

The contract is subject to only one interpretation. It constitutes an agreement to sell all the timber on the property up to and including one million board feet for $18,500. It is not a cutting contract for logs at $18.50 per thousand. Had the parties intended a per-thousand price for the first "up to and including one million board feet" as they did for the excess over one million, they could have stated it in the same simple terms.

■ While the first affirmative answer and defense alleged the contract was ambiguous, the defendant attached and incorporated a copy of the contract to the answer. The contract attached prevails over the allegations as to its legal effect. *Kelley et ux. v. Mallory et ux.*, 202 Or 690, 697, 277 P2d 767; *Strong et al. v. Moore et al.*, 118 Or 649, 245 P 505; *Young v. Evans*, 104 Or 619, 208 P 741. As the contract on its face did not support the allegation of ambiguity, the objection challenging the sufficiency of this defense should have been sustained.

For the same reasons the trial court should not have submitted the interpretation of the contract to the jury.

The plaintiff's objection to the evidence on the second and third affirmative defense and counterclaim for fraud is not tenable. The objection appears to be based upon a claim that damages were not alleged. The counterclaim is in three separate counts and incorporates by reference certain paragraphs of the second

further and separate answer and defense. The defendant's pleading in all three defenses falls short of being a model but the plaintiff did not demur or move against them prior to trial. We conclude that the defendant's answer and counterclaim did allege a counterclaim for fraud including the element of damages.

Plaintiff's next assignment of error is that the court should have required the defendant to elect to stand upon the defense of ambiguity alleged in the first separate answer or the defense of fraud. As we have concluded, the contract was not ambiguous, and we need not determine whether defendant could have been forced to elect between these two defenses if the contract had been ambiguous.

■ The last assignment of error is based upon the refusal of the trial court to grant a nonsuit against defendant's counterclaim for the reason the defendant did not prove the allegations of fraud.

The counterclaim alleges, in substance, that the plaintiff misrepresented the amount of the timber upon the land and the boundary lines of the tract involved.

The elements of actionable fraud are well settled and it is not necessary to repeat them here. See *Musgrave et ux. v. Lucas et ux.*, 193 Or 401, 238 P2d 780; *Conzelmann v. N. W. P. & D. Prod. Co.*, 190 Or 332, 225 P2d 757; *Heise v. Pilot Rock Lbr. Co.*, 222 Or 78, 352 P2d 1072.

The defendant testified as follows:

"A. Well, I asked him if they had any timber for sale and he said yes.

"And, I said, 'How much?'

"And, he said, 'There's a million and a half out there.'

"* * * * *

"Q. What was your discussion at that time?

"A. Well, in regard to the volume of timber.

"Q. What did they tell you about the volume of timber?

"A. That there was a million and a half. They had it cruised at a million and a half feet.

"Q. Did they show you the cruise?

"A. No, they said it was in Salem, that it was not there.

"* * * * *

"Q. * * * Did he make any statement concerning that boundary?

"A. Yes, we drove into that area and got out of his Jeep and he pointed down from that corner, from where the Jeep was parked he pointed south to a corner and said after they had finished logging in there that the corner they found out was in the wrong place and it should have been east two hundred feet or something like that, two hundred or three hundred feet.

"* * * * *

"Q. Could you describe the timber located in that area?

"A. Well, there was a solid stand of timber along that—well, they had logged right up against this solid stand of timber along that line and for the full length of the forty it was a heavy stand of timber all through along that line. But, he said the line was in the wrong place and it should have been east. And, it should have taken in part of that standing timber. It should have been moved into the timber about two hundred feet."

The plaintiff claims that his representations as to the amount of timber upon the property was merely an expression of opinion, that the defendant was not en-

titled to rely upon the representation and that the defendant did not rely, but on the contrary, made his own investigation.

■ "* * * When a positive assurance of the area of a parcel of land is made by the vendor to the vendee, with the design of making the vendee believe it, that assurance is very material and equivalent to an assurance of measurement." *Hunt v. Ring et al.*, 125 Or 111, 117, 265 P 1094.

The defendant claims fraud in the inducement to the contract by the misrepresentation of the amount of the timber.

6. A misrepresentation as to the quantity of real property including timber furnishes a proper basis for the recovery of damages for fraud even though the sale was in gross for a lump sum as in the instant case. *Heise v. Pilot Rock Lbr. Co.*, supra; *Selman v. Shirley*, 161 Or 582, 591-592, 85 P2d 384, 91 P2d 312; *Shafer et ux. v. Ekstrand et ux.*, 140 Or 582, 589, 14 P2d 287; *Hunt v. Ring et al.*, supra; *Lichtenthaler v. Clow*, 109 Or 381, 385-388, 220 P 567; *Purdy v. Underwood*, 87 Or 56, 59, 63, 169 P 536; *Cawston v. Sturgis*, 29 Or 331, 335, 43 P 656.

It is true that the defendant made several trips both by plane and jeep to the timber land involved. It is also true that the defendant had previous experience as a logger. There was no evidence of defendant having any experience as a timber cruiser. The plaintiff, if we accept defendant's testimony, did not express his own estimate of the amount of timber but, on the contrary, stated that it had been cruised and such cruise showed one and one half million feet of timber available. This amounted to a positive representation of fact and the defendant was entitled to rely upon it

in the absence of any fact to put him on notice that the cruise was not accurate.

"* * * When a positive representation is made as to the quantity of land in the absence of special knowledge of other facts and circumstances reasonably calculated to put the misrepresentee on notice, he is not required to make a survey, or in the case of timber, a cruise." *Heise v. Pilot Rock Lbr. Co.*, supra. See also *Rackham v. Koch*, 125 Wash 451, 216 P 835; *Lovejoy v. Isbell*, 73 Conn 368, 47 A 682.

The defendant's right to rely upon the statements concerning the cruise and the true boundary were questions of fact for the jury to determine. The court did not err in submitting defendant's counterclaim for fraud to the jury and the plaintiff's motion for nonsuit was properly overruled.

As the trial court erred in submitting the interpretation of the contract to the jury, the cause is reversed and remanded for a new trial.